**In re Douglas E. GUNDRUM, Debtor.**

**No. 13–12641.**

United States Bankruptcy Court,
S.D. Ohio,
Western Division.

Signed April 3, 2014.

Andrew L. Ruben, David A. Kruer, David Kruer & Company, LLC, Covington, KY, for Debtor.

## MEMORANDUM OF DECISION VACATING ORDER DENYING MOTION TO ALTER, AMEND, OR VACATE

JEFFREY P. HOPKINS, Bankruptcy Judge.

This matter is presently before the Court on the Debtor's motion to alter, amend, or vacate the judgment entry granting relief from stay pursuant to Federal Rules of Civil Procedure 59(e) and 60(b) ("Motion") (Doc. 111) and the objection thereto by the creditor Melvin I. Shapiro ("Shapiro") (Doc. 116). In the Motion the Debtor asserts that the judgment entry granting Shapiro relief from the automatic stay ("Judgment") should be vacated to enable the Debtor to present evidence in support of the chapter 13 plan of reorganization, that the Judgment should be amended to conditionally grant relief from the automatic stay triggered by the Debtor's failure to provide adequate protection payments, and the Judgment should be altered so that it is clear that the decision is a final appealable order. Specifically, in support of the Debtor's request to vacate the Judgment, the Debtor asserts that the grounds upon which the Court found "cause" for granting relief under 11 U.S.C. § 362(d)(1) are inconsistent with both the decisions cited by the Court and applicable law.

### Procedural History

On May 31, 2013, the Debtor filed a bankruptcy petition seeking a discharge of certain of his indebtedness under chapter 13 of the Code (Doc. 1). On October 18, 2013, Shapiro filed a motion for relief from stay (Doc. 65) and a hearing on the motion for relief from stay was held on November 21, 2013. On November 22, 2013, the Court rendered an oral decision finding that the motion for relief from stay should be granted for cause under § 362(d)(1). In support of the decision, the Court found that the Debtor's proposed chapter 13 plan did not adequately protect the interests of Shapiro, the plan was not feasible, and a consideration of the totality of the circumstances lead to the conclusion that the plan was not filed in good faith (Doc. 107). On November 22, 2013, the Court entered the Judgment (Doc. 100), and on December 7, 2013, the Debtor filed the present Motion (Doc. 111) seeking to have the Court alter, amend or vacate the Judgement entered in the case. In response to the Motion, on December 30, 2013, Shapiro filed an objection (Doc. 116).[1]

### Jurisdiction

The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1334(a) and (b). This proceeding arises in a case referred to this Court by the Standing Order of Reference entered in this District and is determined to be a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(G). The Court is authorized to enter final judgment in this proceeding. This memorandum constitutes the Court's findings of fact and conclusions of law under Federal Rule of Bankruptcy Procedure 7052.

### Law

Federal Rule of Civil Procedure 59, made applicable to these proceedings by Federal Rule of Bankruptcy Procedure 9023, allows a bankruptcy court to grant a new nonjury trial on some or all of the issues "for any reason for which a new

---

**1.** Since the filing of the Motion (Doc. 11 and Objection) (Doc. 116), Shapiro has also filed a Motion to Set Hearing (Doc. 127). Because this Order resolves the Motion to Set Hearing, Shapiro's request for a status conference will be denied.

trial has heretofore been granted in an action at law in federal court." Fed. R.Civ.P. 59(a)(1)(A). A motion for a new trial under Rule 59 may be granted " 'if there is: (1) a clear error of law; (2) newly discovered evidence; (3) an intervening change in controlling law; or (4) a need to prevent manifest injustice.' " *In re Pertuset,* 485 B.R. 478, 2012 WL 6598444, at *20 (6th Cir. BAP 2012) (quoting *Intera Corp. v. Henderson,* 428 F.3d 605, 620 (6th Cir. 2005)). However, "[a] motion for a new trial or to alter or amend a judgment [under Rule 59] shall be filed ... no later than 14 days after entry of judgment." Fed. R. Bankr.P. 9023.

■ Federal Rule of Civil Procedure 60(b), made applicable by Federal Rule of Bankruptcy Procedure 9024, provides that "[o]n motion and just terms, the court may relieve a party ... from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; ... or (6) any other reason that justifies relief." Fed.R.Civ.P. 60(b). The party seeking relief from a judgment or an order under Rule 60(b) "bears the burden of establishing that its prerequisites are satisfied," *In re Brown,* 413 B.R. 700, 705 (6th Cir. BAP 2009), and "the party seeking relief under Rule 60(b) bears the burden of establishing the grounds for such relief by clear and convincing evidence." *Info–Hold, Inc. v. Sound Merch., Inc.,* 538 F.3d 448, 454 (6th Cir.2008).

■ Relief from a judgment or an order under Rule 60(b)(1) may be granted because of a mistake, inadvertence, surprise, or excusable neglect. Relief under Rule 60(b)(1) is "intended to provide relief to a party in only two instances: (1) when the party has made an excusable litigation mistake or an attorney in the litigation has acted without authority; or (2) when the judge has made a substantive mistake of

law or fact in the final judgment or order." *Cacevic v. City of Hazel Park,* 226 F.3d 483, 490 (6th Cir.2000) (quoting *Yapp v. Excel Corp.,* 186 F.3d 1222, 1231 (10th Cir.1999)). In evaluating whether relief under Rule 60(b)(1) is appropriate courts consider the following factors: "(1) whether the party seeking relief is culpable; (2) whether the party opposing relief will be prejudiced; and (3) whether the party seeking relief has a meritorious claim or defense." *Williams v. Meyer,* 346 F.3d 607, 613 (6th Cir.2003); *In re Liberty Fibers Corp.,* 05–53874, 2008 WL 2287466, at *4 (Bankr.E.D.Tenn. Apr. 30, 2008). Only after a movant has shown a lack of culpability because of mistake, inadvertence, surprise, or excusable neglect, will the court consider whether prejudice to the party opposing relief and whether the movant has a meritorious claim or defense. *Williams,* 346 F.3d at 613; *In re Smith Mining & Material, LLC,* 399 B.R. 199, 201 (Bankr.W.D.Ky.2008).

■ In addition, when addressing excusable neglect courts must consider "all relevant circumstances surrounding the party's omission." *Pioneer Inv. Servs. Co. v. Brunswick Associates Ltd. P'ship,* 507 U.S. 380, 395, 113 S.Ct. 1489, 123 L.Ed.2d 74 (1993); *Proctor v. N. Lakes Cmty. Mental Health,* 13–1694, —— Fed.Appx. ——, ——, 2014 WL 259964, at *5 (6th Cir. Jan. 23, 2014). All relevant factors encompass the "the danger of prejudice to the [other party], the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith." *Pioneer,* 507 U.S. at 395, 113 S.Ct. 1489. When addressing culpability under this standard, the proper focus is on whether the neglect of the movant or his counsel is excusable. *Id.* at 397, 113 S.Ct. 1489; *In re Gibson & Epps, L.L.C.,* 468

B.R. 279, 290 (Bankr.E.D.Tenn.2012). However, "an attorney's inaction or strategic error based upon a misreading of the applicable law cannot be deemed 'excusable' neglect, even though it might well be excusable for the client to rely on the advice of counsel." *McCurry ex rel. Turner v. Adventist Health Sys./Sunbelt, Inc.*, 298 F.3d 586, 595 (6th Cir.2002).

 In addition to Rule 60(b)(1), relief from a judgment may be granted under Rule 60(b)(6) because of "any other reason that justifies relief." However, relief under Rule 60(b)(6) is only warranted in "exceptional or extraordinary circumstances" which are unaddressed by Rule 60(b)(1)-(5). *Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 863, 108 S.Ct. 2194, 100 L.Ed.2d 855 (1988); *Olle v. Henry & Wright Corp.*, 910 F.2d 357, 365 (6th Cir.1990). " 'Exceptional [or extraordinary] circumstances' under Rule 60(b)(6) means 'unusual and extreme situations where principles of equity mandate relief' coupled with a showing that 'absent relief, extreme and undue hardship will result.' " *Valvoline Instant Oil Change Franchising, Inc. v. Autocare Associates, Inc.*, 173 F.3d 857, 1999 WL 98590, at *3 (6th Cir. 1999) (quoting *Olle*, 910 F.2d at 365).

### Analysis

In the Motion, the Debtor apparently seeks to have the Court alter, amend, or vacate the Judgment under either Rule 59 or Rule 60(b) because of mistake, excusable neglect, surprise, and exceptional circumstances.[2] Specifically, the Debtor requests that the Judgment be vacated so that the Debtor can present evidence in support of confirmation of his chapter 13

plan of reorganization, as currently proposed. Alternatively, the Debtor requests that the Judgment be amended to conditionally grant relief from the stay, but only upon the Debtor's failure to make adequate protection payments, as provided in the plan.

### I. New Trial Pursuant to Rule 59

 Rule 59 allows a movant to seek a new trial " 'if there is: (1) a clear error of law; (2) newly discovered evidence; (3) an intervening change in controlling law; or (4) a need to prevent manifest injustice.' " *Pertuset*, 485 B.R. at *20 (quoting *Intera Corp.* 428 F.3d at 620). However, "[a] motion for a new trial or to alter or amend a judgment [under Rule 59] shall be filed ... no later than 14 days after entry of judgment." Fed. R. Bankr.P. 9023. In this case, the Judgment was entered on November 22, 2013, and the Motion was not filed until December 7, 2013. In order for a request for a new trial under Rule 59 to have been timely, the Debtor would have had to file the Motion, on or before, December 6, 2013. Because the Motion was not filed until December 7, 2013, the request for a new hearing under Rule 59 must be denied as untimely. Aside from the procedural defects in the Motion, and based on the reasons that will follow, the Court also does not find that it committed any clear error of law, that there has been an intervening change in the controlling law, or that a new trial is warranted to prevent a manifest injustice.

### II. Relief From the Order Under Rule 60(b)

In this case, while not explicitly stated in the Motion, the Debtor seeks relief from

---

**2.** The Court is unclear under what sections of Rule 59 and Rule 60 the Debtor seeks relief under since the Motion only references Rules 9023 and 9024 on the first page. The Motion does not address the standards for a new trial

under Rule 59, as made applicable by Rule 9023. Nor does it address the standards for relief from a judgment or an order under Rule 60, made applicable by Rule 9024.

the Judgment because of a mistake of law, excusable neglect in his not presenting evidence, of the plan's feasibility, surprise as to the assertion that cause existed for terminating the automatic stay because the petition was filed in bad faith, and because of extraordinary circumstances. As the party seeking relief from the Judgment, the Debtor bears a heavy burden of showing, by clear and convincing evidence, that the prerequisites of Rule 60(b) have been met and that the Debtor is entitled to such relief. *See Info–Hold,* 538 F.3d at 454; *Brown,* 413 B.R. at 705.

### A. *Mistake, Inadvertence, Surprise, or Excusable Neglect*

The Debtor argues that the Court made a mistake of law in granting relief from the automatic stay since his proposed chapter 13 plan provided Shapiro with adequate protection, the plan was feasible, and it was proposed in good faith. Additionally, the Debtor asserts that he is entitled to relief from Judgment because the Debtor believed, that it was unnecessary to present evidence at the hearing of the plan's feasibility when the Court adjourned that portion of the proceedings and because he was surprised to discover that the Debtor would need to address whether the case was filed in bad faith as one of the factors for establishing cause under § 362(d)(1). In determining whether relief is warranted under Rule 60(b)(1), the Court must first determine whether the Debtor is not culpable because of mistake, inadvertence, surprise, or excusable neglect. *See Williams,* 346 F.3d at 613. Only after

determining that the Debtor is not culpable under these factors, will the Court consider whether Shapiro will be prejudiced and whether the Debtor has a meritorious defense. *See Id.*

#### i. *Adequate Protection*

■ The Debtor asserts that the Court mistakenly relied on the case *In re DB Capital Holdings, LLC,* 454 B.R. 804 (Bankr.D.Colo.2011), in determining that there was cause for granting relief from the automatic stay. The Debtor asserts that "[t]he Court's conclusion that the chapter 11 cases considered in the *DB Capital Holdings* decision are analogous to this case is not appropriate." *See* Doc. 111. The Debtor reaches this conclusion because he asserts that "[t]he pertinent holding of *DB Capital Holdings* applicable here is the worsened secured position of the creditor." *See* Doc. 111. While the court in *DB Capital Holdings* recognized that failure to lift the automatic stay would prevent the creditor in that case from receiving "an amount somewhere between $25,000,000 to $40,450,000," 454 B.R. at 817, the court ultimately held that the creditor was not adequately protected because the debtors' assertions of repayment to the creditor were "at best extremely speculative." 454 B.R. at 818.[3]

Here, the Debtor falls well short of meeting his burden of showing by clear and convincing evidence that the Court made a mistake in law in granting relief from the automatic stay because of a lack of adequate protection. While the Debtor asserts that the Court misinterpreted the holding of, and mistakenly relied upon oth-

---

**3.** "[T]he Court finds the limited proposals and projections the Debtors did present do not provide a convincing basis for finding adequate protection. The Court recognizes valuation of real property and prediction of real property sales and prices are inexact. However, the previous cost overruns of the Project, coupled with the fact the Debtors must rely on high cost, super-priority financing to finish the Project, support a finding the Debtors' assertions of repayment of West LB are at best extremely speculative. Such proposals do not offer adequate protection." *In re DB Capital Holdings, LLC,* 454 B.R. 804, 818 (Bankr.D.Colo.2011).

er cases cited within, *DB Capital Holdings,* other bankruptcy courts around the country have held that "[a]n offer of adequate protection based on the speculative possibility that the funds will materialize simply does not constitute adequate protection." *In re Lakota Canyon Ranch Dev., LLC,* 11–26157, 2012 WL 243741, at *3 (Bankr.D.Colo. Jan. 25, 2012); *see Rocco v. J.P. Morgan Chase Bank,* 255 Fed. Appx. 638, 641 (3rd Cir.2007) ("a lawsuit is too speculative in nature to offer adequate protection."); *In re H.T. Pueblo Properties, LLC,* 11–24718, 2011 WL 6962754, at *8 (Bankr.D.Colo. Dec. 30, 2011) ("Moreover, the Debtor's projections are overly optimistic and speculative, and not based on the Debtor's recent past and present performance. Such projections cannot demonstrate adequate protection pursuant to § 361."). The Debtor's proposed plan speculates on a lump sum payment coming from an unknown source, which once discovered, will be used for refinancing the real property. Debtor further speculates that the funds generated from this proposed financial source will be sufficient to satisfy the payments under the plan and provide Shapiro with adequate protection. *See* Doc. 82. At best Debtor's projections are overly optimistic and speculative. Moreover, based on the Debtor's recent credit history and present performance in keeping up with his plan payments,[4] along with federal and state income taxes and real estate taxes, there simply are no assurances that Shapiro's secured claim, currently hovering around $729,741.67, will be adequately protected, pursuant to § 361. *See H.T. Pueblo Properties,* 2011 WL 6962754, at *8. Accordingly, the Debtor's request for relief pursuant to Rule 60(b) because of a mistake in law is hereby denied.

### ii. Feasibility of Chapter 13 Plan

In addition to asserting that the Court misinterpreted the holding of *DB Capital Holdings,* the Debtor asserts that the Court made a mistake of law in determining that there was cause to lift the automatic stay because the Debtor's proposed chapter 13 plan was not feasible. In particular, the Debtor asserts that there is no case law in support of granting relief from the automatic stay for cause because a proposed plan is not feasible. Additionally, the Debtor asserts that "[p]roving feasibility of the proposed plan in defense to a motion for relief from stay is contrary to the general concept of judicial economy and affording a debtor a reasonable opportunity to present a confirmable plan." *See* Doc. 111.

While § 362 does not define what constitutes cause under § 362(d)(1), courts determine whether relief from the automatic stay is appropriate on a case-by-

---

**4.** Specifically, the Debtor's initial plan, filed July 19, 2013, proposed an initial payment of $500, payments of $2,000 a month for the next eleven months, payments of $7,000 a month for the next twenty months, and then payments of $16,000 until the completion of the plan. *See* Doc. 20. On September 11, 2013, after apparently being unable to meet the funding requirements of the initial plan, the Debtor filed the first amended chapter 13 plan which, among other changes, reduced the payments to be made in months two and three to $500 from $2,000, and proposed nine, instead of eleven, months of payments at $2000. *See* Doc. 45. On September 16, 2013, the Debtor filed a second amended plan. *See* Doc. 46. Subsequent to Shapiro filing a motion for relief from the automatic stay, on November 18, 2013, the Debtor filed a third amended chapter 13 plan which further reduced the funding of the Debtor's plan. *See* Doc. 82. Specifically, the third amended plan provides for three initial payments of $500, three payments of $1,750, three payments of $1,000, three payments of $2,000, and then payments of $7,000 until the plan is completed or until a lump sum payment is made from funds the Debtor will supposedly receive by refinancing certain real property. *See* Doc. 82.

case basis. *In re Laguna Associates Ltd. P'ship*, 30 F.3d 734, 737 (6th Cir.1994). Since cause is broadly defined and a flexible concept, bankruptcy courts, as courts of equity, make determinations of whether cause exists "with an eye towards the overall goals of the Bankruptcy Code." *In re Plastech Engineered Products, Inc.*, 382 B.R. 90, 106 (Bankr.E.D.Mich.2008); *see In re Shultz*, 325 B.R. 197, 201 (Bankr. N.D.Ohio 2005). Cause under § 362(d)(1) is not limited to a lack of adequate protection or a finding of bad faith and can exist when a debtor fails to propose a feasible plan. *In re Watts*, 13–00395, 2013 WL 5979814, at *6 (Bankr.N.D.Iowa Nov. 12, 2013); *In re Garbinski*, 452 B.R. 574, 581 (Bankr.W.D.Pa.2011); *In re Smith*, 333 B.R. 94, 102 (Bankr.M.D.N.C.2005).

In this case the Debtor has not met his burden of showing by clear and convincing evidence that the Court made a mistake in law in granting relief from the automatic stay. The Debtor's proposed plan was patently infeasible. At the conclusion of the relief from stay hearing, the Court concluded from all the evidence, that the Debtor's plan was unworkable because of his constant efforts to adjust the proposed plan payments downwards, reflecting the insufficiency of his income, and the Debtor's heavy reliance on a lump sum payment that may or may not materialize towards the end of the proposed plan. In the plan confirmation context, this Court, and courts around the country, have consistently determined that a lump sum payment near the end of a plan term, makes a plan not feasible. *In re Huffman*, Case No. 11–13447, Doc. 51; *see In re Lynch*, 08–46308, 2009 WL 1955748, at *3 (Bankr. E.D.N.Y. July 6, 2009) ("As a general rule, bankruptcy courts have found that a plan which provides for a single lump sum payment to creditors, at or near the end of the plan term, from a possible sale of the debtor's real property is not feasible."); *In*

re *Isaac*, 05–B–13874, 2005 WL 3939839, at *3 (Bankr.N.D.Ill. Nov. 16, 2005) ("Plans proposed by the debtors where there is a long delay (three to five years) between the date of confirmation and the proposed sale/refinancing of a debtor's residence impose unreasonable delay on creditors."); *In re Hogue*, 78 B.R. 867, 873–874 (Bankr. S.D.Ohio 1987) ("Where the consummation of a Chapter 13 plan hinges entirely upon the happening of a speculative, contingent event, scheduled to occur some three to five years from the date of confirmation, such a plan simply cannot meet the feasibility requirement of § 1325(a)(6).") (internal footnotes omitted). The same cause for relief from the automatic stay that existed at the time of the hearing on the motion for relief from stay remains. There has been no, or very little, change of circumstances. A review of the record, reveals that the Debtor's creditworthiness and his earnings potential remain doubtful. In the current state of his affairs, it is virtually impossible for the Debtor to make more than meager payments under his unconfirmed plan, which is sure to draw an objection to confirmation from Shapiro or the chapter 13 trustee. *See* Doc. 38. Accordingly, the Debtor's request for relief pursuant to Rule 60(b) because of a mistaken determination of feasibility is therefore denied.

### *iii. Debtor's Failure to Present Feasibility Evidence*

In addition to asserting that the Court made a mistake of law in granting relief from the automatic stay because the proposed plan was not feasible, the Debtor asserts that relief pursuant to Rule 60(b) is warranted because of excusable neglect. In this case, the Debtor predicates the excusable neglect upon his having not presented evidence as to feasibility of the proposed plan. When addressing excusable neglect the Court must also consider

all relevant circumstances surrounding the Debtor's decision to not present evidence relative to the feasibility of the Debtor's proposed plan. *See Pioneer*, 507 U.S. at 395, 113 S.Ct. 1489. All relevant factors includes the "the danger of prejudice to the [other party, Shapiro], the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith." *Id.* However, "an attorney's inaction or strategic error based upon a misreading of the applicable law cannot be deemed 'excusable' neglect." *McCurry*, 298 F.3d at 595.

Once again, the Debtor has fallen short of meeting his burden of showing by clear and convincing evidence that he was excusably negligent in failing to present evidence showing that the proposed chapter 13 plan was feasible. The Debtor asserts that he did not put on evidence relating to the feasibility "as a consequence of the Court having directed during the evidentiary hearing that the Court was not going to make a ruling on confirmation and implicitly the question of feasibility of such a plan." *See* Doc. 111.

While the Debtor is correct in stating that the Court did decline to rule on confirmation of the Debtor's proposed plan, this does not mean that issues relevant to confirmation are inconsequential in the relief from stay context. As noted, speculative plans that hinge on a contingent event, such as refinancing or sales of real estate, which are scheduled to occur months or perhaps even years away, simply cannot meet the feasibility standard under § 1325(a)(6). *See Hogue*, 78 B.R. at 873–74. That the Debtor made a strategic mistake by misapprehending the applicable law for what might be considered by a bankruptcy court as cause for granting relief from stay under § 362(d)(1), does

not constitute excusable neglect. *See McCurry*, 298 F.3d at 595. Moreover, even if the Debtor had presented proof of the plan's purported feasibility at the hearing, that evidence ultimately would have been insufficient to rebut Shapiro's request for relief from the stay, given the Court's determination that a chapter 13 plan that relies upon a future lump sum payment near the end of a case is patently unfeasible. *See In re Huffman*, Case No. 11–13447, Doc. 51; *see also Hogue*, 78 B.R. at 873–874. Accordingly, the Debtor's request for relief pursuant to Rule 60(b) because of excusable neglect is hereby denied.

#### iv. Bad Faith

Besides asserting that the Court made a mistake in law and fact in determining that the Debtor's proposed plan was not feasible, the Debtor also asserts that the Judgment should be vacated for surprise. Debtor argues that it was unexpected that the Court would grant relief from the automatic stay because of a bad faith filing. Specifically, the Debtor asserts that it was inappropriate for the Court to find cause for relief from the automatic stay because "it was unexpected that the Court would make such a finding [bad faith] without affording the Debtor reasonable notice or any indication that the Court wanted to consider the applicable factors for a totality of the circumstances to justly make a finding of bad faith." See Doc. 111.

On this score, the Debtor has again failed to show that he is entitled to relief under Rule 60(b) because of surprise. As discussed earlier, since § 362 does not define what constitutes cause under § 362(d)(1), courts determine whether relief from the automatic stay is appropriate on a case-by-case basis. *Laguna*, 30 F.3d at 737. However, the Sixth Circuit has recognized that "a debtor's lack of good

faith in filing a petition for bankruptcy may be the basis for lifting the automatic stay." *Id.* While Shapiro's motion for relief from stay does not explicitly state that it is seeking relief from the automatic stay because of the Debtor's bad faith filing, the motion and the evidence adduced at the hearing presented sufficient facts to put the Debtor on notice that his conduct was suspect. Under any fair reading of the motion for relief from stay, one could not come away with any impression other than that Shapiro was challenging the Debtor's bankruptcy filing, facially, for bad faith. Shapiro asserted in the motion for relief from stay that the Debtor's company, ABC Riverside, LLC, the original purchaser of the real estate, *fraudulently* transferred the property to the Debtor in 2012, without notice or his consent, in violation of a mortgage agreement. Also, according to the Shapiro's relief from stay motion, this was done to avoid having the property immediately revert to Shapiro under the terms of the state court consent judgment upon ABC's default on the payments. The relief from stay motion further asserts that the Debtor caused the property to be transferred to him, individually, because the "Debtor wanted to file the Chapter 13 Petition for the sole purpose of staying Shapiro's foreclosure litigation." *See* Doc. 65. These, along with other factors enumerated in Shapiro's motion, including allegations that the Debtor's income projections were merely "wishful thinking" and his earnings were insufficient to make plan payments based on the seasonal nature of his business, that the Debtor lacked the financial wherewithal to make needed and expensive improvements to the real estate to convert the business into a year around enterprise, and that the Debtor lacked bona fides in dealings with his creditors, particularly Shapiro, signaled to the Debtor that a central theme in Shapiro's motion was that the bankruptcy case was not filed in good faith. *See In re Cusano,* 431 B.R. 726, 735 (6th Cir. BAP 2010) ("while filing on the eve of, for example, a foreclosure or, as in this case, a debtor's examination is not necessarily an indication of bad faith, it is probative of bad faith."); *In re Glenn,* 288 B.R. 516, 520 (Bankr.E.D.Tenn. 2002) ("a debtor's filing on the eve of foreclosure is not necessarily an indication of bad faith. This conduct is, however, 'probative of bad faith.' ") (internal citations omitted). Based on the foregoing, the Debtor's request for relief pursuant to Rule 60(b) because of surprise is hereby denied.

### B. *Extraordinary Circumstances*

In addition to seeking relief from the Judgment pursuant to Rule 60(b)(1), it appears that the Debtor may be asserting that relief from the Judgment is also warranted because of extraordinary circumstances. In this instance, relief under Rule 60(b)(6) is unobtainable because the grounds asserted in the Motion appear to be those addressed in Rule 60(b)(1). *See Liljeberg,* 486 U.S. at 863, 108 S.Ct. 2194. Accordingly, the Debtor's request for relief pursuant to Rule 60(b)(6) because of extraordinary circumstances is hereby denied.

### III. Final Appealable Order

In addition to seeking relief from the Judgment under Rule 60(b), the Debtor asserts that the Judgment should be altered so that it is clear that the decision is a final appealable order. In the Sixth Circuit, the law is well settled that the lifting of the automatic stay by a bankruptcy court is a final order for purposes of appellate review. *In re Sun Valley Foods Co.,* 801 F.2d 186, 190 (6th Cir.1986); *In re Mentag,* 430 B.R. 439, 444 (E.D.Mich. 2010); *In re Brown,* 13–8037, 2014 WL 997340, at *1 (6th Cir. BAP Mar. 17, 2014).

Accordingly, the Debtor's request that the Judgment be amended so that it is clear that it is a final appealable order is hereby denied.

### Conclusion

For the reasons stated above, the Motion will be **DENIED.** The Debtor's motion for a new hearing under Rule 59(e) was untimely and the Debtor ultimately failed to meet his burden in showing that he was entitled to relief from the Judgment because of mistake, excusable neglect, surprise, or extraordinary circumstances. Further, given the nature of the Motion, it was not clear to the Court that the Debtor actually articulated a claim for a new trial or relief from the Judgement. The Court will enter a judgment to this effect.

**IT IS SO ORDERED.**